517 So.2d 1121 (1987)
Gary M. BOURGERE, Individually and as Mayor for the City Harahan
v.
Thomas B. ANZELMO, Fred Barocco, Karen Ranatza, and Tim Walker, Aldermen of the City of Harahan, individually and in their official capacities.
No. 87-CA-376.
Court of Appeal of Louisiana, Fifth Circuit.
December 8, 1987.
Writ Denied February 5, 1988.
*1122 Salvador Anzelmo, New Orleans, for defendants-appellants.
Bernard M. Plaia, Jr., Metairie, for plaintiff-appellee.
Before KLIEBERT, GRISBAUM and WICKER, JJ.
GRISBAUM, Judge.
This appeal arises out of an injunctive matter resulting in the Mayor of Harahan having succeeded in having enjoined the operation of Ordinance 937 (the Ordinance) by which the Board of Aldermen seek to place various constraints on the hiring, firing, and suspension of municipal employees that fall outside the scope of civil service protection. We set aside in part and affirm in part.
The basic facts and procedural history are not relevant to the issues presented and will accordingly not be repeated.
We are called upon to determine whether any section of the Ordinance conflicts with our state statutory law in that it places powers and duties elsewhere than where the law directs or otherwise revokes, restricts, or limits statutory grants to particular municipal entities.[1]
LAW
As amended by Act 1076 of 1986 (effective January 1, 1987), the Lawrason Act is to govern "All municipalities" except those opting out in any of several ways. La.R.S. 33:321. It appears conceded by all that this Act currently governs the City of Harahan and has done so at all times pertinent to this case. In contrast to its prior enumeration of municipal powers, which was almost rigidly in keeping with the municipality-as-creature-of-the-State concept of local government,[2] present La.R.S. 33:361 provides that
A. Except as otherwise provided in this Part, a municipality shall be vested with all powers, rights, privileges, immunities, authorities, and duties heretofore possessed in accordance with all constitutional and statutory provisions with respect thereto. A municipality is further authorized to exercise any power and perform any function necessary, requisite, or proper for the management of its affairs not denied by law.
B. The power to perform any function necessary, requisite, or proper for the management of its affairs shall specifically include the power to levy and collect taxes and to assume indebtedness as provided by law. In this regard, the board of aldermen of a municipality may levy and collect taxes, incur debt, and issue bonds and other evidences of indebtedness as authorized by law.
Contemplating a municipality as a more or less autonomous entity, the amended version of § 361 is more in keeping with the option of local governments to, in part, divorce themselves from the State-creature concept through charter. La. Const. art. VI §§ 5 and 6. Having remarked this grant of inherent power, however, one must also remark that it perhaps prompts a shift in query from whether the power exists at all to who should exercise what portions of it, the question presented here.
Under La.R.S. 33:362(A)(1) "The legislative powers of a municipality shall be vested in and exercised by the board of aldermen." The aldermen may "Enact ordinances and enforce the same by fine." Section 362(A)(2)(b). Additionally, and central to the questions here, under § 362(A)(3),
Subject to law, including R.S. 33:423.2 and 423.3, and applicable civil service rules and regulations, the board of aldermen shall, by ordinance, provide policies and procedures regulating the employment of municipal employees including the hiring and firing of such employees.
*1123 Exercising municipal power in conjunction with the aldermen is the mayor, who "shall be the chief executive officer of the municipality." Section 362(B). The mandatory phrasing of this provision and just how far executive power extends are also central to the questions here. The mayor and aldermen, together with a chief of police, a tax collector, and a street commissioner, compose the necessary municipal officers. La. R.S. 33:381.
The Lawrason Act at various points defines the manner in which the mayor and aldermen must share municipal power. For example, "Any department of a municipality, other than the police department and a municipality with an elected chief of police, shall be created, abolished, merged, or consolidated by the board of aldermen, upon written recommendation of the mayor." La.R.S. 33:362(C). Similarly, "Any vacancy in a municipal office to which the officer is elected or appointed by the mayor and board of aldermen may be filled for the term by the mayor and board of aldermen at any regular or special meeting." Section 383(C). And again,
the mayor, subject to confirmation by the board of aldermen, shall appoint a clerk, tax collector, and all other necessary officers whose election is not provided for in R.S. 33:381. In the event of a vacancy, the mayor, subject to confirmation by the board of aldermen, shall appoint a successor to any such office.
Section 386(A). And "The mayor, subject to confirmation by the board of aldermen, may appoint and fix compensation for an attorney at law for the municipality." Section 386(C). Likewise, collaboration is contemplated by the process for enacting ordinances, La.R.S. 33:406.
Insofar as respective powers and duties, the domain of the mayor is defined by La.R.S. 33:404 as follows:
A. The mayor shall have the following powers, duties, and responsibilities:
(1) To supervise and direct the administration and operation of all municipal departments, offices, and agencies, other than a police department with an elected chief of police, in conformity with ordinances adopted by the board of aldermen and with applicable provisions of state law. All administrative staff shall be subordinate to the mayor.
(2) To delegate the performance of administrative duties to such municipal officers or employees as he deems necessary and advisable.
(3) Subject to applicable state law, ordinance, and civil service rules and regulations, to appoint and remove municipal employees, other than the employees of a police department with an elected chief of police. However, appointment or removal of a nonelected chief of police, the municipal clerk, the municipal attorney, or any department head, shall be subject to approval by the board of aldermen, except that in the case of tie vote, the recommendation of the mayor shall prevail.
(4) To sign all contracts on behalf of the municipality.
(5) To prepare and submit an annual operations budget and a capital improvements budget for the municipality to the board of aldermen in accordance with the provisions of R.S. 39:1301 et seq. and any other supplementary laws or ordinances.
(6) To represent the municipality on all occasions required by state law or municipal ordinance.
(7) To be the keeper of the municipal seal and affix it as required by law.
(8) To sign warrants drawn on the treasury for money, to require that the municipal clerk attest to such warrants, to affix the municipal seal thereto, and to keep an accurate and complete record of all such warrants.
(9) To have any other power or perform any other duty as may be necessary or proper for the administration of municipal affairs not denied by law.
B. The provisions of this Section shall not be construed to alter, affect, or amend any powers, duties, and functions of any elected chief of police as set forth in R.S. 33:423, R.S. 33:423.2, and R.S. 33:423.3.
Subsections (A)(1), (A)(2), and (A)(3) speak to powers vis-a-vis departments, officers, *1124 and employees, respectively, subsection (A)(3) being chiefly pertinent to the present controversy. Compensation for municipal officers is fixed by the board of aldermen under § 404.1, which provides:
The board of aldermen shall by ordinance fix the compensation of the mayor, aldermen, clerk, chief of police, and all other municipal officers. The board of aldermen shall also by ordinance have the authority to increase or decrease the compensation of any nonelected municipal officer and to increase the compensation of elected officials except as otherwise provided by R.S. 33:405(G). However, the board of aldermen shall not reduce the compensation of the mayor or any elected official during the term for which he is elected.
ANALYSIS
Harahan Ordinance 937 contains four substantive sections. The first provides that,
Except as may otherwise be provided in R.S. 33:362, no non-Civil Service employee of the City of Harahan shall be either hired or fired without the Mayor of the City of Harahan first obtaining the confirmation of the Board of Aldermen by a majority vote at any regular or special meeting.
Under its language, this section appears to bestow on the aldermen a final veto of or assent to the hiring or firing of each noncivil service municipal employee. Under R.S. 33:362(A)(3), the board of aldermen shall "provide policies and procedures regulating the employment of municipal employees including the hiring and firing of such employees." Under § 404(A)(3), the mayor, subject to ordinance, has the power, duty, and responsibility "to appoint and remove municipal employees, other than the employees of a police department with an elected chief of police." It reasonably follows that the mayor, as chief executive officer, is intended to have the day-to-day charge of administering municipal government. This charge encompasses the right to hire and to fire municipal employees, subject to the "policies and procedures" promulgated by the board of aldermen, the "legislative body" (La.R.S. 33:362(A)(1)) charged with directing municipal policy. This duty to enact policies and procedures does not extend to the right to make individual decisions. Only at the officer level a more policy-directed levelare the aldermen empowered to participate in individual selections, and, even then, they must act in collaboration with the mayor. See La.R.S. 33:383(C); 33:386(A), (C). We therefore conclude that § 1 of the Ordinance impermissibly trenches on the prerogative of the mayor in that it seeks to confirm individuals, not promulgate policy and procedure. Accordingly, it was properly enjoined.
Section 2 of Ordinance 937 provides as follows
Except as may otherwise be provided in R.S. 33:362, prior to the hiring or firing of any non-Civil Service employee of the City of Harahan, the Mayor shall first present to the Board of Aldermen the name of the employee to be either hired or fired, the rate of compensation that the employee is to be paid at the time of hire or is then being paid in the case of a proposed termination. The Mayor shall also provide the Board with the amount of money then available in the budget of the department in which the proposed employee is to be hired.
Section 2 presents a somewhat closer question, for, unlike § 1, it appears to establish a procedure for hiring and firing. However, while we are cognizant that requiring information to be supplied before any employment action undercuts the construction of this section as a mere registry provision and is, apparently, in furtherance of the confirmation goal of § 1, this section standing alone establishes only a procedure ensuring that the board of aldermen is supplied with certain information. Therefore, § 2 was improperly enjoined; we set aside the injunction as to this section.
Section 3 of Ordinance 937 states that,
Except as may otherwise be provided in R.S. 33:362, prior to the hiring of any non-Civil Service employee of the City of Harahan on and after January 1, 1987, the Mayor shall certify to the Board of *1125 Aldermen that the person who is proposed for hire meets all of the qualifications for the position to be filled as set out in the applicable job description for employees presently in effect for the City of Harahan.
This section appears to establish only a procedural check as to the applicant's qualifications. That is, it enacts a reasonable step to be undertaken in the hiring process. Therefore, the injunctive action by the trial court regarding this section is set aside.
Section 4 provides thus:
Anything contained in this Ordinance to the contrary notwithstanding, the Mayor of the City of Harahan shall have the power and authority to suspend, for cause, any non-Civil Service employee of the City of Harahan for a period not to exceed the number of days between the date of such suspension and the next regular or special meeting of the Board of Aldermen, without having to first obtain the confirmation of the Board of Aldermen.
The mayor's power to hire and to fire encompases also the power to suspend. Therefore, § 4 was properly enjoined.
By its terms, the Ordinance deems any sections declared invalid to be severable from provisions that can be given effect.[3] Accordingly, we entertain no hesitancy in allowing only parts of the Ordinance to stand.
For the reasons assigned, that aspect of the trial court's judgment which enjoined §§ 2 and 3 of Ordinance 937 is hereby set aside. In all other respects, the judgment dated March 19, 1987 is affirmed. All costs of this appeal are to be assessed against the appellants.
SET ASIDE IN PART AND AFFIRMED IN PART.
NOTES
[1] We are implored by the appellant also to determine whether injunctive relief is a proper remedy for the mayor to pursue. Inasmuch as we consider injunctive relief clearly proper under the rationales of Lentini v. City of Kenner, 252 La. 413, 211 So.2d 311 (La.1968) and Caddo Parish School Bd. v. Bd. of Elections Supervisors of Caddo Parish, 384 So.2d 448 (La.1980), we shall not pursue the question further.
[2] See La. Const. art. VI § 2.
[3] Section 8, in full, reads as follows:

If any provision or item of the Ordinance or the application thereof is held invalid, such invalidity shall not affect other provisions, items, or applications of this Ordinance which can be given effect without the invalid provisions, items, or applications, and to this end the provisions of this Ordinance are hereby declared severable.