Dear Aldermen Lindsey and Groves:
You have requested the opinion of this office regarding the finance and accounting practices of the City of Tallulah. We note that the City of Tallulah is governed by a mayor — board of aldermen form of government, under the provisions of R.S.33:321, et seq., the Lawrason Act.
Your correspondence asks that we address the following specific inquiries:
 1. Can Tallulah's mayor and clerk pay city bills without the authorization of the Board of Aldermen?
This question has already been addressed by this office with respect to another Lawrason Act municipality in Opinion No. 89-90. Some of the findings of that opinion are summarized herein.
In accordance with R.S. 33:362, the mayor is the chief executive officer of the municipality. As observed in Bourgere v. Anzelmo, 517 So.2d 1121 (La.App. 5th Cir. 1987), the mayor, as chief executive officer, is intended to have the day-to-day charge of administering municipal government. According to R.S.33:404, which sets forth the specific powers, duties and responsibilities of the mayor, he has any other power necessary for the proper administration of municipal affairs. Among those specific duties, the mayor must prepare and submit annual operations budgets and a capital improvements budget to the board of aldermen.
R.S. 33:386 provides that the mayor, subject to confirmation by the board of alderman, appoints the city clerk. According to R.S. 33:404(8), the mayor has the specific duty to sign warrants drawn on the treasury for money and to require the clerk to attest to such warrants.
On the other hand, the legislative powers of the municipality are vested in the board of aldermen [R.S. 33:362A(1)].
Based upon the concept of this division of power, it does not appear that the board of aldermen has a duty or right to approve specific bills for payment. The board of aldermen do approve the budget, but after the budget is approved and the Board of Aldermen has appropriated funds therefore, the mayor has the power and the duty to pay bills in the conduct of the proper administration of municipal affairs. It is the opinion of this office that the aldermen have no right or duty to approve the payment of specific bills, if same fall within a category in the approved budget and proper appropriations have been made therefore.
 2. Can the mayor and city clerk place dedicated bond proceeds in the general fund? If not, what is the penalty for doing so? What is the penalty for not paying unemployment insurance to the state when it is being withheld from employee salaries?
According to your letter, the improprieties alleged above were reported in the City of Tallulah's last audit report. This office has obtained a copy of that report from the Office of the Legislative Auditor. The report is dated January 22, 1992 and covers the year ended June 30, 1991.
We note the audit reported the following material weakness:
 "The City is required to maintain debt service funds for the resources accumulated to service various bond issues. During the year the individual debt service funds were not properly accounted for. It was necessary to recreate the recording of various transactions to properly reflect the activity of the funds. Failure to properly account for the debt service fund resources and bond principal and interest payments could result in failure to have on hand resources to pay bond principal and interest in a timely manner.
 "The City Clerk should be familiar with sinking fund requirements and reserves required in certain instances and insure that all activity is properly recorded and accounted for within the appropriate debt service fund. "City Response — All debt service funds will be properly segregated. Requirements to maintain sinking funds and reserves will be observed." (emphasis supplied)
Our review of the audit report indicates that although errors were made in regard to the segregation of dedicated funds, these errors were rectified by "recreating the recording of various transactions to properly reflect the activity of the funds." Our reading of the audit did not reveal any indication of intentional misconduct on the part of the mayor or the clerk, nor did it reflect that the municipality suffered a loss of funds or any other damages as a result of the errors.
In response to your question regarding any "penalty" owed by the mayor and clerk, I direct you to R.S. 42:1461, which states, in pertinent part:
 "Officials, whether elected or appointed and whether compensated or not, and employees of any `public entity' . . . by the act of accepting such office of employment assume a personal obligation not to misappropriate, misapply, convert, misuse, or otherwise wrongfully take any funds, property, or other things of value belonging to or under the custody or control of the public entity in which they hold office or are employed.
 "The breach of an obligation established under this Section gives rise to an action in favor of the public entity for the recovery of any such funds, property, or other things of value and for any other damages resulting from the breach . . ."
Our reading of the audit report did not reveal a lack of payment of unemployment insurance. Therefore, a discussion of this issue is pretermitted.
Trusting this adequately responds to your inquiry, I remain,
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: JEANNE-MARIE ZERINGUE Assistant Attorney General
RPI:JMZ:jav 0144n