Dear Mayor Davis:
This office is in receipt of your recent opinion request in which you present the following issues for our review:
 1. May the City Council of Baker under the provisions of the Home Rule Charter of the City of Baker and the applicable laws of the State of Louisiana substitute its budgets for the budget prepared by the Mayor?
 2. May the City Council legally use a private citizen to develop the operating budgets for the City in lieu of the City's Budget Director developing the budgets?
 3. Does the City Council have the authority to set employees' salaries through the schedules developed by the City Council?
 4. Does the City Council have authority to change the budget structure and substitute what the Council desires as the budgets?
 5. Must the Mayor implement the Council's budgets rather than the budgets that were developed and presented by the Mayor?
In Section 3-01 of the Baker City Charter, it clearly establishes the mayor as the chief executive officer of the City and endows him with the executive and administrative authority over all departments, offices and agencies of the City. The executive power vested in the Mayor of a city includes the power to execute the laws, that is, to carry them into effect, as distinguished from the power to make the laws and the power to judge them. The legislative power, which is the power to make laws and policy for the city are vested in the City Council as outlined in Section 2-01 of the City Charter.
Sec. 6-12 of the Baker City Charter states:
 The mayor shall submit to the council by May fifteenth his recommendations for the capital budget and program. The recommendations of the mayor shall be in the form of a proposed capital budget ordinance, a capital program, and a capital budget message in support of his proposals.
Further Section 3-07 states:
 . . . He [mayor] shall prepare and submit to the council the pay plan, the operating and capital budgets, and capital plan, and all other planning and programming documents as require council approval.
As the charter reads, the mayor may submit financial proposals, however the proposals are subject to the approval of the City Council. As stated in Section 6-13 of the City charter, "After such public hearings as the council deems necessary, the capital budget shall be approved as an ordinance"
The provisions of the Baker City Charter, with particular attention being paid to those provisions of the charter cited above, lead this office to conclude that the City Council is permitted to make alterations and substitutions to the budget as they deem necessary as long as the proper procedure is followed. The budget shall be passed in open public meeting by a majority vote at a regular meeting of council. This procedure must be done prior to June 15th of each year. See Sections 2-23and 6-13 of Baker City Charter. According to the minutes of the June 11, 2002 Baker City Council Meeting, the decision to substitute the Mayor's proposed budget was voted in favor by four of the five Council members.
There is neither a specific statute nor are there any provisions in the City Charter which prohibit a private citizen from developing the operating budgets for the city in lieu of the City's Budget Director. According to the Baker City Charter, as long as there is a majority vote of the amendment, regardless of who submitted the proposal, the substitution is permissible. Although the mayor may have his disapproval noted, the City Council may override the Mayor's proposal.
City Charter Section 2-24 reads:
 All ordinances vetoed by the mayor shall become law when again passed by the council, in accordance with its rules, by the affirmative vote of two-thirds of the entire authorized membership of the council.
Attached is a copy of La. Atty General Opinion Number 82-1191, to aid in your inquiry. It states in part:
 The council's power in regard to fiscal affairs can only be understood in the light of historical, constitutional, and traditional function of the legislative bodies of `The power of the purse.' It is this power, from the very founding of the Republic, which has provided the legislative branch of government with its principal tool in serving as a `check and balance' upon the executive branch. Any claim limiting the legislative branch to the narrow role of simply saying `yes' or `no' to the initiative of the executive branch flies in the face of the entire history and direction of government and political science in this country.
In addition to the City charter, La R.S. 33:404 outlines the duties of the mayor. As the chief executive officer of the city, the Mayor must execute the law. The Mayor does not have the authority to create laws/ordinances; he only has the power to ensure that the law is followed. Therefore, it is this office's opinion that the Mayor must implement the Council's budget rather than the budget that was presented by the Mayor.
In response to whether the City Council has the authority to supervise and direct the administration and operation of city employees, it is our opinion that this power is not vested in the City Council. Having the authority to supervise and direct the administration and operation of city employees, the Mayor has the authority to adjust a city employee's salary. Attached is Louisiana Attorney General Opinion Number 92-730 in which a similar issue was addressed. La. Atty Gen Op No. 92-730 states:
 While the legislative power is vested in the council, the City Council does not have unlimited power in connection with their legislative function under Sec. 2-01(A) The power to legislate would not allow them to infringe upon an area reserved to the Mayor, and any such ordinance would be invalid. Bourgere v. Anzelmo, 517 So.2d 1121
(LA.App 1987), Atty.Gen.Op. Nos. 90-112, 87-477.
The salary changes must be within the allotted budget. As a matter of law under the Louisiana Local Budget Act, La R.S. 13:1301, any method of payment which varies from the originally discussed and approved method must be reconsidered and approved by the board in an open and public meeting in order to be in compliance with the Open Meetings Law. Therefore, the authority to set employee salaries is vested in the Mayor as long as the salary changes do not affect the overall budget.
In conclusion, the Office of the Attorney General is of the opinion that the City Council may substitute the Mayor's proposed budget if there has been an adequate hearing. There are no restrictions upon who shall create a budget proposal; the only qualification is that it is approved by City Council's majority vote. As chief executive officer of the City of Baker, the Mayor must implement the budget presented by the Council. However, the Mayor does have the authority to set city employees' salaries as long as it does not affect the proposed budget.
We hope this sufficiently answers your inquiries, however if we can be of further assistance please do not hesitate to contact us.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: _____________________________ CHARLES H. BRAUD JR. Assistant Attorney General
DATE RELEASED: July 30, 2003
Charles H. Braud, Jr. Assistant Attorney General
OPINION NUMBER 92-730
November 25, 1992
71 — Municipalities
The Monroe City Council adopt an ordinance which would restrict or prohibit the Mayor from setting hourly work schedules of City employees to allow them to have continuing education.
Thomas V. Gardner, Jr., Esq. Assistant City Attorney P.O. Box 123 Monroe, LA 71210-0123
Dear Mr. Gardner:
This office is in receipt of your request for an opinion of the Attorney General in regard to the policy for continuing education for city employees in Monroe. You indicate the Mayor's policy is when an employee pursues additional education, he allows the employee to have the necessary time off from working hours if (1) approval is obtained from the employee's department head and the Mayor; (2) the absence will not disrupt the department's operations; (3) the employee must make the time up or deduct it from annual leave; and (4) the employee must agree that departmental necessities may require missed classes.
However, the City Council introduced an ordinance which would prohibit the Mayor from authorizing such arrangements unless the continuing education was directly related to the employee's current job duties; the class was not offered during off-work hours at any local college or university; and the employee must maintain a B Grade point average in the course.
The Mayor contends the ordinance infringes upon his power, whereas the Council maintains the proposed ordinance is within their legislative function and authority.
Your question is as follows:
Can the Monroe city Council adopt an ordinance which would restrict or prohibit the Mayor from setting and/or arranging the hourly work schedule of a City employee to allow that employee to further his education?
We must conclude that the reasoning of this office in Atty.Gen.Op. No. 81-777 is applicable to your inquiry. Therein the question was whether the City Council of Monroe had authority to establish the salary level of City employees or did this fall under the proper authority of the Mayor. In holding that the Council's attempt to adjust an individual's salary by line item adjustment in the budget was a violation of the city charter, this office stated as follows:
As noted above, the Charter clearly separates the executive and legislative powers and duties as between the council and the mayor (Section 2-01A and Section 3-01). As an affirmation of separation of powers, the Charter expressly prohibits the council from involving themselves "in any manner" in the appointment, removal, direction or supervision of any city employee. It would be unrealistic to take the position that the exercise of authority to adjust an individual's salary is not an involvement in supervision over that individual employee. Other than the power of hiring and firing, the power to adjust an individual's salary would seem to be the most basic exercise of authority over that individual's employment.
Pursuant to Sec. 3-01 the mayor as chief executive officer of the City "shall exercise general executive and administrative authority over all departments, offices and agencies of the City", and under Sec. 2-06(B) the city council is prohibited from involving themselves "in any manner in the appointment, removal, direction or supervision of any City administrative officer or employee.
While the legislative power is vested in the council, the City Council does not have unlimited power in connection with their legislative functionunder Sec. 2-01(A) The power to legislate would not allow them to infringe upon an area reserved to the Mayor, and any such ordinance would be invalid. Bourgere v. Anzelmo, 517 So.2d 1121 (LA.App 1987), Atty.Gen.Op. Nos. 90-112, 87-477.
Thus, we conclude the Monroe City Council cannot adopt an ordinance which would restrict the Mayor from supervision of the work hours of city employees in connection with their further education.
We hope this sufficiently answers your question, but if we can be of further assistance, please do not hesitate to contact us.
Sincerely yours,
 Richard P. Ieyoub Attorney General
 By: Barbara B. Rutledge Assistant Attorney General La. Atty. Gen. Op. No. 92-730, 1992 WL 610647 (La.A.G.)
OPINION NUMBER 82-1191
December 28, 1982
71-1-B HOME RULE CHARTER, MUNICIPALITIES
Slidell City Council may reduce appropriations on its own initiative. Council may amend any budget initiated by the Mayor. Council's amendments need not be published provided proposed budget was advertised.
Mr. Reinhard J. Dearing Council Administrator Slidell City Council City Hall Slidell, La. 70458
Dear Mr. Dearing:
We are in receipt of your request for an opinion regarding Ordinance No. 1562, the Mayor's veto message of December 6, 1982, the City Attorney's opinion of December 6, 1982 and related documents.
Taken as a whole the documents submitted to our office deal with issues that 90 beyond the question of the Council's legal authority to amend ordinance No. 1562 and its authority to reduce appropriations in the operating budget for Fiscal Year 1982-1983. This office is addressing only the legal question involved and other points that are closely related to the legal questions.
The legal questions to be addressed are:
1) May the City Council reduce an appropriation on its own initiative?
2) May the City Council offer its own amendments to the budget, whether basic budget or supplemental budget, once the Mayor has submitted a request to amend the basic operating and/or capital budget or once the Mayor has offered a supplemental budget for adoption during a fiscal year?
The Slidell City Council clearly has the authority to reduce any appropriation at any time.
The Slidell City Charter, Section 5-05C provides:
Reduction of Appropriation: If at anytime during the fiscal year it appears to the Mayor that the revenues available will be insufficient to meet the amount appropriated, the Mayor shall report to the Council without delay, indicating the estimated amount of the deficit, any remedial action taken and recommendations as to any other steps to be taken. The council shall then take such further action as it deems necessary to prevent a deficit. Subject to the limitation in this section, the Council may, by ordinance, reduce any appropriation at any time.
The above section clearly deals with two different situations. Excluding the last sentence, the language provides for what both the Mayor and the Council shall do in case of a deficit. The language is mandatory in nature leaving no option in the face of a deficit. However, the last sentence of Section 5-05C addresses another situation, i.e., it provides for what the Council may do in regard to appropriations whether or not a deficit exists. The language is not mandatory; it leaves the Council an option, but the authority it provides is incontrovertible.
`Subject to the limitations in this section, the council may, by ordinance, reduce any appropriation at any time. (Emphasis added.)
The phrase, `Subject to the limitations in this section . . .' clearly referes to Section 5-05E, which begins with the very word `Limitations.' The section provides:
Limitations: No appropriation for debt service may be reduced or transferred, and no appropriation may be reduced below any amount required by law to be appropriated or by more than the amount of the unencumbered balance thereof.
This limitation is not at all violated by the Council's action.
The Slidell City Council has the authority to amend any budget submitted by the Mayor either at the time of the adoption of the budget (Section 5-02) or whenever the Mayor opens the door to the amendment process by requesting a budget amendment (Section 5-05D), or on its own initiative `to meet a public emergency' (Section 5-05B.)
In Ordinance No. 1562 the Council is exercising two separate powers in one ordinance. It is reducing appropriations pursuant to the authority granted by Section 5-05C (above) and it is amending the supplemental budget submitted by the Mayor pursuant to Section 5-05D. The Council clearly has the authority to take both actions.
Regarding advertisement, Section 5-02 provides:
At the meeting of the Council at which the operating budget is submitted, the Council shall oder a public hearing on it and shall cause to be published in the official journal, at least ten days prior to the date of such hearing, the time and place thereof, a general summary of the proposed budget and the times and places where copies of the proposed budget are available for public inspection. At the time and place so advertised, the Council shall hold a public hearing on the budget as submitted.
The Council has complied with all of the above requirements. It is noted that the Charter does not even require publication of the budget in its entirety, but rather it requires `a general summary of the proposed budget.' There is no requirement whatsoever regarding the publication of proposed amendments to the proposed budget.
The purpose of publication of the public's business is obvious. The public must be alerted to what its government intends to do. In this matter, alerting the public to a proposed supplemental budget and/or to a proposed amendment to the basic operating and/or capital budget carries with it sufficient practical notice regarding any possible Council amendments because the Council amendments can only be discussed and adopted in conjunction with action taken on the original proposal submitted by the Mayor, which proposal has been published in the official journal alerting the interested public to be present for the entire process at the public meeting.
It does not appear that the Council has appropriated funds in excess of what the Mayor has certified to be over estimated revenues.
It does not appear that the Council has appropriated funds other than by department or program.
We find no requirement anywhere compelling individual Council members to inform the entire Council, the Mayor, or the Finance Department of amendments which will be submitted in open Council meeting for discussion and action. The very openness of the debate before adoption informs everyone concerned and protects the public's interest. It is then, customarily, that any amendments are offered. No prior notice is required.
We find no requirement that the Council must seek the advice of the City Attorney upon any matter and it is unheard of that the elected governing authority must ever obtain the consent of the City Attorney prior to acting in its official capacity.
The council's power in regard to fiscal affairs can only be fully understood in light of the historical, constitutional, and traditional function of legislative bodies as custodians of `The power of the purse.' It is this power, from the very founding of the Republic, which has provided the legislative branch of government with its principal tool in serving as a `check and balance' upon the executive branch. Any claim limiting the legislative branch to the narrow role of simply saying `yes' or `no' to the initiative of the executive branch files in the face of the entire history and direction of government and political science in this country, and it would render pointless the appropriation process of the legislative branch as set out in Section 2-10A(4).
Additionally, a proper perspective is also dependent upon Slidell's own charter which grants the Council, as the city's governing authority, `the right and authority to exercise any power and perform any function necessary, requisite or proper for the management of its affairs, not denied by this charter, or by general law, or inconsistent with the consitution,' (Section 1-05.)
Furthermore, Section 1-06 empowers the Council:
. . . to pass all ordinances requisite or necessary to promote, protect and preserve the general welfare, safety, health, peace, and good order of the city, including but not by way of limitation, the right, power, and authority to pass ordinances on all subject matters necessary, requisite, or proper for the management of the City's affairs and all other subject matters without exception, subject only to the limitation that the same shall not be inconsistent with the consitution or expressly denied by general law applicable to the City. (Emphasis added.)
The Slidell City Council has acted legally and properly in its adoption of Ordinance No. 1562 as amended by the Council.
Very truly yours,
 William J. Guste, Jr Attorney General
 By: Warren E. Mouledoux First Assistant Attorney General La. Atty. Gen. Op. No. 82-1191, 1982 WL 186163 (La.A.G.)