Dear Mr. Levy:
You have requested an opinion of the Attorney General regarding whether the mayor or the board of aldermen for the City of Westwego has the legal authority to select persons to be retained or employed to perform professional services for the city. Section 2:142(a) of the Code of Ordinances of the City of Westwego (Westwego City Code) states that "[e]ach person who is to be retained or employed to perform professional services for the city shall be selected by the board of aldermen from the list of those persons submitting statements of qualification and/or proposals pursuant to said selection." The question is whether the ordinance to select professional service contracts is in conflict with the mayor's authority and powers as the chief executive officer of the municipality.
The City of Westwego is a political subdivision of the State of Louisiana operating under and governed by the Lawrason Act, La.R.S. 33:321, et seq. Under the Lawrason Act, the municipality is governed by a mayor/board of aldermen form of government with the legislative powers vested in the board of aldermen and the mayor acting as the chief executive officer of the municipality.[1] The mayor/board of aldermen system allows for checks and balances to ensure that neither the mayor nor the board of aldermen exceeds its authority or acts unilaterally. La.R.S. 33:404 sets forth the duties of mayor, and provides in pertinent part as follows:
A. The mayor shall have the following powers, duties, and responsibilities:
(1) To supervise and direct the administration and operation of all municipal departments, offices, and agencies, other than a police department with an elected chief of police, in conformity with ordinances adopted by the board of aldermen and with applicable provisions of state *Page 2 
law; however, no such ordinance may limit the authority granted to the mayor by this Paragraph. All administrative staff shall be subordinate to the mayor.
(2) To delegate the performance of administrative duties to such municipal officers or employees as he deems necessary and advisable.
(3) Subject to applicable state law, ordinances, and civil service rules and regulations, to appoint and remove municipal employees, other than the employees of a police department with an elected chief of police. However, appointment or removal of a nonelected chief of police, the municipal clerk, the municipal attorney, or any department head shall be subject to approval by the board of aldermen, except that in the case of a tie vote, the recommendation of the mayor shall prevail. Furthermore, selection or removal of any person engaged by a municipality to conduct an examination, review, compilation, or audit of its books and accounts pursuant to R.S. 24:517 shall be subject to approval by the board of aldermen of that municipality.
(4) To sign all contracts on behalf of the municipality.
 ***
(9) To have any other power or perform any other duty as may be necessary or proper for the administration of municipal affairs not denied by law.
The board of aldermen of a Lawrason Act community is the legislative body of the municipality. La.R.S. 33:362 outlines the powers of the board of aldermen and provides in pertinent part as follows:
A. (1) The legislative powers of a municipality shall be vested in and exercised by the board of aldermen.
(2) The board of aldermen may:
 ***
(b) Enact ordinances and enforce the same by fine not to exceed five hundred dollars or imprisonment not exceeding sixty days, or both.
(c) Provide by ordinance for assessing against the abutting property the cost of cutting, destroying, or removing noxious weeds, grass, or other deleterious, unhealthy, or noxious growths or accumulations on any sidewalk; assess on the owner of such lot or place or area the cost of cutting, destroying, or removing noxious weeds, grass or other deleterious, unhealthy, or noxious growths or accumulations within the corporate limits; and on the owner of any lot or place or area within the corporate limits the cost of cutting, destroying or removing noxious weeds, grass, or other deleterious, unhealthy, or noxious growth or accumulation on the lot or place or area; and provide for the filing of notice of such cost which shall constitute a privilege upon the property and shall be prior in rank to mortgages, vendor's privileges, and all other privileges except tax privileges. *Page 3 
 ***
(3) Subject to law, including R.S. 33:423.2 and 423.3, and applicable civil service rules and regulations, the board of aldermen shall, by ordinance, provide policies and procedures regulating the employment of municipal employees including the hiring and firing of such employees.
While the board of aldermen may establish policies and procedures for administration of the municipality, statutorily these policies and procedures must be reasonable and not infringe upon an area reserved to the mayor. An ordinance that interferes with the mayor's right to conduct the daily operations of the municipality is improper.[2]
In 1990, the City of Westwego enacted Section 2:142(a) of the City of Westwego Code, which provides that "[e]ach person who is to be retained or employed to perform professional services for the city shall be selected by the board of aldermen from the list of those persons submitting statements of qualification and/or proposals pursuant to said selection." The ordinance bestows upon the Board of Aldermen the authority to select professional service contracts for the City of Westwego.
Although state law does not specifically provide with whom the authority to select professional service contracts rest, the powers of the mayor and the board of aldermen listed within the Lawrason Act provide us much guidance. Among the responsibilities of day-to-day administration, the mayor has the authority, subject to state law, ordinance, and civil service rules, "to appoint and remove municipal employees."[3] The board of aldermen shall "provide policies and procedures regulating the employment of municipal employees including the hiring and firing of such employees."[4]
In Bourgere v. Anzelmo, [5] the court ruled that ordinances placing constraints on the hiring, firing and suspension of non-civil service municipal employees by the mayor were in conflict with the statute giving the mayor the administrative responsibilities for administering the municipality. The Court held that the mayor has the right to hire and fire, subject only to the "policies and procedures" promulgated by the board of aldermen. As stated by the Court, "[t]his duty to enact policies and procedures does not extend to the right to make individual decisions."
Furthermore, La.R.S. 33:386 provides the mayor may appoint and fix compensation for an attorney for the municipality "subject to confirmation by the board of aldermen." Finally, this office has recognized the mayor may authorize an individual to perform *Page 4 
services for the benefit of the city, but he may not legally obligate the city to pay for those services without the approval of the board of aldermen.[6]
Considering the foregoing, it is the opinion of this office that the authority to select each person to be retained or employed to perform professional services for the city rests with the mayor. Therefore, Ordinance 2:142(a) of the City of Westwego Code is an improper and unauthorized impingement of the mayor's legal and statutory authority.
Finally, based upon the concept of the mayor/board of aldermen division of power, it does not appear that the board of aldermen has a duty or right to approve specific bills for payment. While the board of alderman approves the budget, once the budget has been approved and the funds have been appropriated, the mayor has the power and the duty to pay bills in the conduct of the proper administration of municipal affairs.[7] Accordingly, it is the opinion of this office that the Board of Aldermen has no duty or right to approve specific professional services contracts for payment when the contract falls within a category on the approved budget and proper appropriations have been made.
We hope that this opinion has adequately addressed the legal issues you have raised. If our office can be of any further assistance, please do not hesitate to contact us.
With best regards, JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL BY: ____________ Erin C. Day Assistant Attorney General JDC: ECD
[1] La.R.S. 33:362.
[2] Bourgere vs. Anzelmo517 So. 2d 1121 (La.App. 5 Cir. 1987); writ den. 519 So.2d 130 (La. 1988). See also La. Atty. Gen. Op. No. 87-477, 98-58 and 07-0087.
[3] La.R.S. 404(A)(3); La. Atty. Gen. Op. Nos. 88-33, 86-705, 90-112.
[4] La.R.S. 33:362(A)(3).
[5] 517 So. 2d 1121 (La.App 5 Cir. 1987); writ den. 519 So.2d 130 (La. 1988).
[6] La. Atty. Gen. Op. No. 90-616.
[7] See La. Atty. Gen. Op. Nos. 03-183 and 92-215.