Dear Mayor Mosca:
You advise that you have recently been elected to the position of Mayor of the City of Harahan and took office on January 1, 2011. You also advise that in your first week of office you eliminated the full-time position of regulatory director, terminated the person that held the position and in his place hired a part-time third party provider to perform the services previously provided by the regulatory director. You have asked this office to render an opinion as to whether city council approval was needed prior to your taking these actions. You also ask whether city council approval was needed prior to your hiring the third party provider if the salary was already provided for in the City Budget Ordinance. Your specific questions concern your appointment authority of officers, department heads and/or employees of the City of Harahan and the input and/or approval afforded the city council over these appointment-related decisions.
You have confirmed that the City of Harahan is a political subdivision of the State of Louisiana operating under and governed by the Lawrason Act, La.R.S. 33:321, et seq. Under the Lawrason Act, the municipality is governed by a mayor/board of aldermen (here a city council) form of government with the legislative powers vested in the board of aldermen and the mayor acting as the chief executive officer of the municipality. La.R.S. 33:362. The mayor/board of aldermen system allows for checks and balances to ensure that neither the mayor nor the board of aldermen exceeds its authority or acts unilaterally. La.R.S. 33:404 sets forth the duties of mayor, and provides in pertinent part as follows:
 A. The mayor shall have the following powers, duties, and responsibilities:
 * * * *Page 2 (3) Subject to applicable state law, ordinances, and civil service rules and regulations, to appoint and remove municipal employees, other than the employees of a police department with an elected chief of police. However, appointment or removal of a nonelected chief of police, the municipal clerk, the municipal attorney, or any department head shall be subject to approval by the board of aldermen, except that in the case of a tie vote, the recommendation of the mayor shall prevail. Furthermore, selection or removal of any person engaged by a municipality to conduct an examination, review, compilation, or audit of its books and accounts pursuant to R.S. 24:517 shall be subject to approval by the board of aldermen of that municipality.
 * * *
The board of aldermen of a Lawrason Act municipality is the legislative body of the municipality. La.R.S. 33:362 outlines the powers of the board of aldermen and provides in pertinent part as follows:
 A. (1) The legislative powers of a municipality shall be vested in and exercised by the board of aldermen.
 * * * (3) Subject to law, including R.S. 33:423.2 and 423.3, and applicable civil service rules and regulations, the board of aldermen shall, by ordinance, provide policies and procedures regulating the employment of municipal employees including the hiring and firing of such employees.
 B. The mayor shall be the chief executive officer of the municipality.
 C. Any department of a municipality, other than the police department in a municipality with an elected chief of police, shall be created, abolished, merged, or consolidated by the board of aldermen, upon written recommendation of the mayor.
 * * *
Based on the foregoing, a mayor has the authority to appoint and remove city employees without necessitating input or approval from the city council, except as it relates to policies and procedures they may develop regulating the employment of municipal employees, including the hiring and firing of such *Page 3 
employees.[1] La.R.S. 33:404 A(3). As for the appointment and removal of department heads, a mayor's recommendation is subject to approval by the city council, except in the case of a tie vote where the mayor's recommendation prevails. Id. On the other hand, the city council has the authority to create, abolish, merge or consolidate any departments of the city, but only upon written recommendation by the mayor. La.R.S. 33:362.
Your specific inquiries concern the position of regulatory director within your administrative staff. You report that no ordinance exists for the City of Harahan that defines the position of regulatory director as a department head or an officer of the municipality. It is your contention that the regulatory director is an employee of the City of Harahan but not a department head or a municipal officer because the position is not established by ordinance and because it is not one of the enumerated positions set forth in La.R.S. 33:381. La.R.S. 33:381 provides that the officers of a municipality operating under the Lawrason Act "shall be a mayor, aldermen, a chief of police, a tax collector, and a clerk."La.R.S. 33:381 A.
First we will address whether the city regulatory director is an officer of the City of Harahan. You are not the first mayor to assert that officers of a municipality are limited to those officers listed in La.R.S. 33:381. In Ardoin v. Rougeau, 95-774 (La.App. 3 Cir. 1/31/96), 670 So.2d 441, the mayor of the City of Eunice asserted that the public officers of a Lawrason Act municipality were limited to those specified in La.R.S. 33:381. The court disagreed, finding that the list of officers in La.R.S. 33:381 was not exhaustive and then pointed to the language in La.R.S. 33:386 which sets forth a mayor's authority to appoint "all other necessary officers whose election is not provided for in R.S. 33:381", subject to confirmation by the city council.[2]Id. at 442. *Page 4 
In Ardoin, the court utilized the following test to distinguish between an employee and a public official of a municipality:
 If the individual acts as an agent of the state and exercises a portion of the sovereign power or if the office occupied involves a large degree of independence in which the individual is not under the direct supervision and control of an employer then the individual is a public officer. (citation omitted)
 Id. at 444. Armed with this test, the Ardoin court concluded that a municipal attorney was a public officer because he was not under the direct supervision and control of an employer.[3] Id. at 444.
In discussions subsequent to your opinion request, you report that the person holding the position of city regulatory director is under the direct supervision and control of the mayor. You also indicate that the city regulatory director must enforce and implement the laws governing a matter brought before him and is without authority to grant variances. As mayor, you have the ultimate authority over all decisions made by the city regulatory director.
Based on the foregoing, and in light of Ardoin, it is the opinion of this office that because of the degree of control exercised by the mayor over the city regulatory *Page 5 
director and his decisions, the city regulatory director is not an officer of the City of Harahan as contemplated in La.R.S. 33:368 A., such that his appointment or removal would require the City Council's approval.
Next, we will address whether the city regulatory director is a department head of the City of Harahan which would thereby necessitate city council approval prior to the appointment and removal of the person holding the position.
You have provided this office with information that while the City of Harahan does not have an ordinance that establishes the regulatory director as a department head, the City of Harahan has two ordinances that speak to a city regulatory director. City of Harahan Ordinances, Sec. 86-8 and 1333 have the following to say about a city regulatory director, respectively:
 City regulatory director means the city official, or a designee designated by the mayor, who shall receive all subdivision applications; forward all applications to planning and zoning commission and board of adjustments; issue all building permits, violations and citations; and provide for all necessary inspections of said construction.
 The City Regulatory Director, or a designee designated by the Mayor who shall issue all building permits, violations and citations and provide for all necessary inspections of said construction.
The above-mentioned provisions are a part of the City of Harahan's subdivision regulations and the comprehensive zoning law of the city, respectively. Again, you could not provide us with any ordinance, resolution or any other act of the Harahan City Council declaring the city regulatory director a department head.
A simple viewing of the City of Harahan's official website indicates that the City of Harahan has multiple departments established to administer services provided to its citizens. The departments mentioned on the website are: police, fire, maintenance, recreation, regulatory, and permit and license. Each department appears to be headed by a person holding the position of either director or chief.
A review of the minutes from the budget hearings of the Harahan City Council held on January 31, 2011 and February 7, 2011 indicates that the city's budget is presented to the city council by department by either the mayor or the director/chief of the respective department. Based upon all appearances, the City of Harahan has established departments to provide the services for the citizens of its municipality and has a department head at the helm of each department. *Page 6 
Furthermore, a cursory review of the ordinances that govern the City of Harahan reveals multiple ordinances that speak to the supervisory capacity of the directors of the various departments. For example, City of Harahan Ordinances, Sec. 54-1 et seq.
provides for noise control within the City of Harahan. Included is Ordinance, Sec. 54-3 which provides for the administration of the noise control program and states in pertinent part:
 The noise control program required by this chapter shall be administered by the director of the regulatory department. In order to implement and enforce this chapter, and for the general purpose of noise abatement and control, the duly appointed and authorized representative of the regulatory department, under the direct supervision of the director, shall have the power to: . . .
Another example can be found within the city's ordinances related to discharge regulations. At City of Harahan Ordinances, Sec. 90-85 regarding enforcement authority is the following in pertinent part:
 (a) Violations of this division, when known, or at occurrence, accidental or otherwise, shall be reported to the following governing agencies:
 (1) The city maintenance department;
 (2) The city police department;
 (3) The city sewerage department;
 (4) The city fire department
 * * * (b) The director of the maintenance department shall be the principal enforcing city agent, coordinating ordinance enforcement with and through the aforesaid agencies, as made necessary for enforcement, subject to independent governing authorities having jurisdiction and the city council.
 * * *
Based on the foregoing, it appears that the City of Harahan has been operating and providing services for its citizens through departments[4] that have a designated director or chief providing supervision and oversight over each department. Hence, the City of Harahan operates its departments with department heads. Therefore, we conclude that the regulatory director is a department head that leads the regulatory department. *Page 7 
As stated previously, under R.S. 33:404A(3) the powers, duties, and responsibilities of the mayor include the appointment or removal of any department head subject to approval by the board of aldermen, except that in the case of a tie vote, the recommendation of the mayor shall prevail.
In analyzing La.R.S. 33:404A(3), we are mindful of the following principles of statutory construction set forth by our supreme court in City of New Orleans v. LA Assessors' Retirement and ReliefFund, 05-2548 (La. 10/1/07), 986 So.2d 1,17:
 Legislation is the solemn expression of the legislative will and, therefore, the interpretation of a law primarily involves the search for the legislature's intent. The starting point in ascertaining that legislative intent is the language of the statute itself. In examining that language, words and phrases are to be read in their context and to be accorded their generally prevailing meaning. LSA-C.C. art. 11; LSA-R.S. 1:3. It is presumed that every word, sentence, or provision in a law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were employed. As a result, courts are bound, if possible, to give effect to all parts of a statute and to construe no sentence, clause, or word as meaningless and surplusage if a construction giving force to, and preserving, all words can legitimately be found.
 When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the legislature's intent. LSA-C.C. art. 9; LSA-R.S. 1:4. When the language of a law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. LSA-C.C. art. 10. Finally, when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. LSA-C.C. art. 12. (Citations to case law omitted.)
Applying the principles of statutory construction to the powers, duties, and responsibilities of a mayor, and based on our conclusion that the regulatory director is a department head, we conclude that La.R.S. 33:404A(3) requires a mayor to obtain approval from the board of aldermen before the appointment or removal of a department head occurs, and the same should have been done here. *Page 8 
Your next question is whether city council approval was needed prior to your hiring the third party provider if the salary for such position was already provided for in the City Budget Ordinance. In order to answer this inquiry we again look to the provisions governing Lawrason Act municipalities. See La.R.S. 33:321 etseq. The legislative powers, including control of the public fisc, are vested in the board of aldermen, with the mayor being the chief executive officer of the municipality. La.R.S. 33:362(A)(1), 33:362(B).
The power of the board of aldermen encompasses the control of the fisc, and a mayor cannot supersede the fiscal control of the town council without the latter's approval, and the town treasurer can only disburse municipal funds on a warrant issued by order of the mayor and board of aldermen. Thus, as this office stated in Atty. Gen. Op. No. 94-520, "[t]herefore, the mayor's expenditure of municipal funds without specific appropriation by the town council is a power denied him by law."
In conversations with this office subsequent to your opinion request, you report that you have hired a third party provider to provide permitting/regulatory related services to the City of Harahan. You report that you have not entered into a contractual relationship with the third party provider. Instead, you indicate that he is a part-time employee of the city. You indicated that your need for hiring this person is based upon requirements set forth in La.R.S. 40:1730.23 of the Louisiana Uniform Construction Code ("Construction Code"). This statutory provision requires municipalities in this state to enforce only the construction codes provided for in Title 40 and further requires all municipalitiesto use building code enforcement officers or certified third-partyproviders contracted by the municipality to act in the capacity of a building code enforcement officer to enforce the provisions.La.R.S. 40:1730.23.
The plain language of La.R.S. 40:1730.23 indicates that the municipality can either use a building code enforcement officer[5]
or a certified third-party provider "contracted by the municipality." Again, you indicate that you have hired a third party provider to perform these services. La.R.S. 40:1730.23 sets forth that the third party provider is contracted by the municipality. As a general rule, a mayor acting alone is without power to execute a contract binding on the city in the absence of an ordinance or resolution by the governing council authorizing him to do so.See Atty. Gen. Op. Nos. 05-0221, 04-0052, 93-283. Once the council authorizes the mayor to enter into a contract, the mayor of a Lawrason Act municipality is the sole authority to sign and execute the contract. La.R.S. 33:404(A)(4); seealso Atty. Gen. Op. No. 07-0018. *Page 9 
In answer to your second question, it is the opinion of this office that, if the municipality does not employ a building code enforcement officer, then, La.R.S. 40:1730.23 contemplates the third party provider is contracted by the municipality. The public fisc is controlled by the board of aldermen; therefore, a mayor can only enter into a contract with a third-party provider upon approval from the board of aldermen, even if monies are already provided for the position within the City Budget. Therefore, city council approval was needed to hire the third party provider.
We trust that this adequately responds to your request. If you have any questions please do not hesitate to contact us.
With kindest regards, I remain
 Yours very truly,
 JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
 BY:__________________________ SONIA MALLETT Assistant Attorney General
 JDC:SM:jv
[1] In the past, the courts were called upon to resolve a dispute between the mayor and aldermen of the City of Harahan over an ordinance that placed various constraints on the mayor in the hiring, firing, and suspension of non-civil service municipal employees. In Bourgere v. Anzelmo,517 So.2d 1121 (La.App 5 Cir. 1987), the court found the provisions of an ordinance invalid that bestowed on the aldermen a final veto of or assent to the hiring or firing of each non-civil service municipal employee. The court also found the provisions of that same ordinance valid that established policies and procedures related to the hiring, firing, and suspension of non-civil service employees.Id. at 1124. The court acknowledged that the duty to enact policies and procedures does not extend to the right to make individual decisions. The court then acknowledged that "[o]nly at the officer level — a more policy-directed level — are the aldermen empowered to participate in individual selections, and, even then, they must act in collaboration with the mayor." Id.
[2] La.R.S. 33:386 provides in pertinent part:
 A. At the first regular meeting of the board of aldermen succeeding each regular municipal election, the mayor, subject to confirmation by the board of aldermen, shall appoint a clerk, tax collector, except as provided for in R.S. 33:381 (D), and all other necessary officers whose election is not provided for in R.S. 33:381. In the event of a vacancy, the mayor, subject to confirmation by the board of aldermen, shall appoint a successor to any such office. In making or approving such appointments and in filling vacancies, the mayor and board of aldermen shall give preference to residents of the municipality if all other considerations are equal.
 * * * D. The term of the clerk, tax collector, nonelected chief of police, street commissioner, municipal attorney, and court magistrate shall end at the time of the first regular meeting of the board of aldermen succeeding each regular municipal election.
 * * *
[3] Included within the Ardoin court's reasoning is a survey of other cases that have addressed whether or not an employee was an officer of the municipality. The surveyed cases included:Cloud v. State, 420 So.2d 1259 (La App. 3 Cir. 1982), wherein a deputy coroner was recognized as a public officer, as was a parish attorney in Williams v. Board of Trustees, 94-1024 (La.App. 1 Cir. 4/7/95), 653 So.2d 1337, whereas inState v. Haltom, 462 So.2d 662 (La.App. 1 Cir. 1984), a parish road superintendent was not a public officer because he was subject to the supervision and control of the police jury.Id. at 443.
[4] Whether these departments have been established in accordance with La.R.S. 33:362C are not the subject of this opinion, and no opinion is rendered in that regard.
[5] While La.R.S. 40:1730.23 sets forth the options available to a municipality for purposes of enforcing the Construction Code, the municipality cannot step outside of the Lawrason Act when it comes to hiring the personnel that will perform the services.