Dear Mr. Ford:
By resolution of the council of the Town of Clinton, you ask the following question: may the town enact an ordinance empowering the town's department heads to hire and fire municipal employees?
The Town of Clinton is governed by home rule charter. The powers of the mayor are set forth in Section 5 of the charter and include the following:
 Sec. 5. Powers of mayor
 The mayor shall have the following powers, duties, and responsibilities:
 (1) To supervise and direct the administration and operation of all municipal departments, offices, and agencies, other than a police department with an elected chief of police, in conformity with ordinances adopted by the board of aldermen and with applicable provisions of state law. All administrative staff shall be subordinate to the mayor.
 (2) To delegate the performance of administrative duties to such municipal officers or employees as the mayor deems necessary and advisable.
 (3) Subject to applicable state law and ordinances, to appoint and remove municipal employees. . . . (Emphasis added).
The mayor of the Town of Clinton "shall be the chief executive officer of the municipality." See Sec. 4.1(B) of the charter. He has the authority to supervise *Page 2 
and direct all municipal agencies, including municipal employees. The mayor is also authorized to "appoint and remove" municipal employees.
The legislative powers of the Town of Clinton are vested in the board of aldermen. See Sec. 4.1(A)(1) of the charter. The board of aldermen "may, by ordinance, provide policies and procedures regulating the employment of municipal employees including the hiring and firing of such employees." See Section 4.1(A)(3).
The power to legislate does not allow the council to infringe upon an area reserved to the mayor. Any such ordinance which does so is invalid.Bougere vs. Anzelmo, 517 So.2d 1121 (La.App. 5th Cir. 1987); writ den.519 So.2d 130 (La. 1988). In Bougere, the court held invalid a city ordinance which gave the aldermen a "veto" with respect to hiring and firing municipal employees, stating:
 It reasonably follows that the mayor, as chief executive officer, is intended to have the day-to-day charge of administering municipal government. This charge encompasses the right to hire and to fire municipal employees, subject to the "policies and procedures" promulgated by the board of aldermen, the "legislative body" charged with directing municipal policy. This duty to enact policies and procedures does not extend to the right to make individual decisions. Only at the officer level-a more policy-directed level-are the aldermen empowered to participate in individual selections, and, even then, they must act in collaboration with the mayor. We therefore conclude that § 1 of the Ordinance impermissibly trenches on the prerogative of the mayor in that it seeks to confirm individuals, not promulgate policy and procedure. See Bourgere, supra, at page 1124.
While the court's ruling in Bougere concerned a Lawrason Act municipality, the conclusions of the court are applicable to the Town of Clinton as the home rule charter provisions closely track the Lawrason Act statutes, R.S. 33:321, et seq. A copy of the Bougere case is enclosed for your further review.
Of further import are previous opinions in which this office determined that while the aldermen's authority to promulgate the policies and procedures for the hiring and firing extends to such things as qualifications, limiting the number of employees, and office hours, the aldermen lack authority to hire, fire, or discipline municipal employees. See Attorney General Opinions 90-112, 87-477, and 86-325, copies attached.
It is the opinion of this office the proposed ordinance would infringe upon the mayor's authority and, if enacted, would be invalid. In contrast, please review the *Page 3 
enclosed opinions of this office concerning those policies and procedures affecting municipal employees which may be regulated by ordinance.
We hope the foregoing is helpful to you. Should you have other questions we may provide assistance, please contact this office.
Very truly yours,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 BY:___________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL *Page 1121 
 ATTACHMENT
Gary M. BOURGERE, Individually and as Mayor for the City Harahan v. Thomas B. ANZELMO, Fred Barocco, Karen Ranatza, and Tim Walker, Aldermen of the City of Harahan, individually and in their official capacities.
No. 87-CA-376.
Court of Appeal of Louisiana, Fifth Circuit.
Dec. 8, 1987.
Writ Denied Feb. 5, 1988.
Mayor brought action seeking to enjoin operation of city ordinance placing various constraints on hiring, firing and suspension of municipal employees. The District Court, Jefferson Parish, M. Joseph Tiemann, J., enjoined operation of the ordinance, and appeal was taken. The Court of Appeal, Grisbaum, J., held that: (1) ordinance giving aldermen final veto of or assent to hiring or firing of each noncivil service municipal employee conflicted with statute giving mayor day-to-day responsibility for administering municipal government, and (2) ordinance requiring mayor to certify to aldermen that person who was proposed for hire met all of qualifications for position did not conflict with mayor's statutory powers.
Set aside in part and affirmed in part.
1. Injunction 114(2)
Mayor could seek to enjoin operation of city ordinance which was allegedly in conflict with state law.
2. Municipal Corporations 111(2)
City ordinance giving aldermen final veto of or assent to hiring or firing of each noncivil service municipal employee conflicted with statute giving mayor day-to-day responsibility for administering municipal government. LSA-R.S. 33:362, subd. A(3), 33:404, subd. A(3), 33:404.1.
3. Municipal Corporations 111(2)
City ordinance requiring mayor to give certain information to aldermen before hiring or firing any noncivil service employee did not conflict with statute concerning power of mayor. LSA-R.S. 33:362, subd. A(l),33:383, subd. C, 33:386, subds. A, C.
4. Municipal Corporations 111(2)
City ordinance requiring mayor to certify to aldermen that person who was proposed for hire met all of qualifications for position did not conflict with mayor's statutory powers. LSA-R.S. 33:361, 33:362, subds. A(1), (2)(b), (3), B; LSA-Const. Art. 6, §§ 5, 6.
5. Municipal Corporations 111(2)
City ordinance limiting mayor's power to suspend noncivil service employees conflicted with mayor's statutory power to hire and fire. LSA-R.S. 33:361, 33:362, subds. A(1), (2)(b), (3), B; LSA-Const. Art. 6, §§ 5, 6. *Page 1122 
Salvador Anzelmo, New Orleans, for defendants-appellants.
Bernard M. Plaia, Jr., Metairie, for plaintiff-appellee.
Before KLIEBERT, GRISBAUM and WICKER, JJ.
GRISBAUM, Judge.
This appeal arises out of an injunctive matter resulting in the Mayor of Harahan having succeeded in having enjoined the operation of Ordinance 937 (the Ordinance) by which the Board of Aldermen seek to place various constraints on the hiring, firing, and suspension of municipal employees that fall outside the scope of civil service protection. We set aside in part and affirm in part.
The basic facts and procedural history are not relevant to the issues presented and will accordingly not be repeated.
[1] We are called upon to determine whether any section of the Ordinance conflicts with our state statutory law in that it places powers and duties elsewhere than where the law directs or otherwise revokes, restricts, or limits statutory grants to particular municipal entities.[1]
LAW
As amended by Act 1076 of 1986 (effective January 1, 1987), the Lawrason Act is to govern "All municipalities" except those opting out in any of several ways. La.R.S. 33:321. It appears conceded by all that this Act currently governs the City of Harahan and has done so at all times pertinent to this case. In contrast to its prior enumeration of municipal powers, which was almost rigidly in keeping with the municipality-as-creature-of-the-State concept of local government,[2]
present La.R.S. 33:361 provides that
A. Except as otherwise provided in this Part, a municipality shall be vested with all powers, rights, privileges, immunities, authorities, and duties heretofore possessed in accordance with all constitutional and statutory provisions with respect thereto. A municipality is further authorized to exercise any power and perform any function necessary, requisite, or proper for the management of its affairs not denied by law.
 B. The power to perform any function necessary, requisite, or proper for the management of its affairs shall specifically include the power to levy and collect taxes and to assume indebtedness as provided by law. In this regard, the board of aldermen of a municipality may levy and collect taxes, incur debt, and issue bonds and other evidences of indebtedness as authorized by law.
Contemplating a municipality as a more or less autonomous entity, the amended version of § 361 is more in keeping with the option of local governments to, in part, divorce themselves from the State-creature concept through charter. La.Const. art. VI §§ 5 and 6. Having remarked this grant of inherent power, however, one must also remark that it perhaps prompts a shift in query from whether the power exists at all to who should exercise what portions of it, the question presented here.
Under La.R.S. 33:362(A)(1) "The legislative powers of a municipality shall be vested in and exercised by the board of aldermen." The aldermen may "Enact ordinances and enforce the same by fine." Section 362(A)(2)(b). Additionally, and central to the questions here, under § 362(A)(3),
 Subject to law, including R.S. 33:423.2 and 423.3, and applicable civil service rules and regulations, the board of aldermen shall, by ordinance, provide policies and procedures regulating the employment of municipal employees including the hiring and firing of such employees. *Page 1123 
Exercising municipal power in conjunction with the aldermen is the mayor, who "shall be the chief executive officer of the municipality." Section 362(B). The mandatory phrasing of this provision and just how far executive power extends are also central to the questions here. The mayor and aldermen, together with a chief of police, a tax collector, and a street commissioner, compose the necessary municipal officers. La.R.S. 33:381.
The Lawrason Act at various points defines the manner in which the mayor and aldermen must share municipal power. For example, "Any department of a municipality, other than the police department and a municipality with an elected chief of police, shall be created, abolished, merged, or consolidated by the board of aldermen, upon written recommendation of the mayor." La.R.S. 33:362(C). Similarly, "Any vacancy in a municipal office to which the officer is elected or appointed by the mayor and board of aldermen may be filled for the term by the mayor and board of aldermen at any regular or special meeting." Section 383(C). And again,
 the mayor, subject to confirmation by the board of aldermen, shall appoint a clerk, tax collector, and all other necessary officers whose election is not provided for in R.S. 33:381. In the event of a vacancy, the mayor, subject to confirmation by the board of aldermen, shall appoint a successor to any such office. Section 386(A). And "The mayor, subject to confirmation by the board of aldermen, may appoint and fix compensation for an attorney at law for the municipality." Section 386(C). Likewise, collaboration is contemplated by the process for enacting ordinances, La.R.S. 33:406.
Insofar as respective powers and duties, the domain of the mayor is defined by La.R.S. 33:404 as follows:
 A. The mayor shall have the following powers, duties, and responsibilities:
 (1) To supervise and direct the administration and operation of all municipal departments, offices, and agencies, other than a police department with an elected chief of police, in conformity with ordinances adopted by the board of aldermen and with applicable provisions of state law. All administrative staff shall be subordinate to the mayor.
 (2) To delegate the performance of administrative duties to such municipal officers or employees as he deems necessary and advisable.
 (3) Subject to applicable state law, ordinance, and civil service rules and regulations, to appoint and remove municipal employees, other than the employees of a police department with an elected chief of police. However, appointment or removal of a nonelected chief of police, the municipal clerk, the municipal attorney, or any department head, shall be subject to approval by the board of aldermen, except that in the case of tie vote, the recommendation of the mayor shall prevail.
 (4) To sign all contracts on behalf of the municipality.
 (5) To prepare and submit an annual operations budget and a capital improvements budget for the municipality to the board of aldermen in accordance with the provisions of R.S. 39:1301 et seq. and any other supplementary laws or ordinances.
 (6) To represent the municipality on all occasions required by state law or municipal ordinance.
 (7) To be the keeper of the municipal seal and affix it as required by law.
 (8) To sign warrants drawn on the treasury for money, to require that the municipal clerk attest to such warrants, to affix the municipal seal thereto, and to keep an accurate and complete record of all such warrants.
 (9) To have any other power or perform any other duty as may be necessary or proper for the administration of municipal affairs not denied by law.
 B. The provisions of this Section shall not be construed to alter, affect, or amend any powers, duties, and functions of any elected chief of police as set forth in R.S. 33:423, R.S. 33:423.2, and R.S. 38:423.3.
Subsections (A)(1), (A)(2), and (A)(3) speak to powers vis-à-vis departments, officers, *Page 1124 
and employees, respectively, subsection (A)(3) being chiefly pertinent to the present controversy. Compensation for municipal officers is fixed by the board of aldermen under § 404.1, which provides:
 The board of aldermen shall by ordinance fix the compensation of the mayor, aldermen, clerk, chief of police, and all other municipal officers. The board of aldermen shall also by ordinance have the authority to increase or decrease the compensation of any nonelected municipal officer and to increase the compensation of elected officials except as otherwise provided by R.S. 33:405(G). However, the board of aldermen shall not reduce the compensation of the mayor or any elected official during the term for which he is elected.
ANALYSIS
[2] Harahan Ordinance 937 contains four substantive sections. The first provides that,
 Except as may otherwise be provided in R.S. 33:362, no non-Civil Service employee of the City of Harahan shall be either hired or fired without the Mayor of the City of Harahan first obtaining the confirmation of the Board of Aldermen by a majority vote at any regular or special meeting.
Under its language, this section appears to bestow on the aldermen a final veto of or assent to the hiring or firing of each noncivil service municipal employee. Under R.S. 33:362(A)(3), the board of aldermen shall "provide policies and procedures regulating the employment of municipal employees including the hiring and firing of such employees." Under § 404(A)(3), the mayor, subject to ordinance, has the power, duty, and responsibility "to appoint and remove municipal employees, other than the employees of a police department with an elected chief of police." It reasonably follows that the mayor, as chief executive officer, is intended to have the day-to-day charge of administering municipal government. This charge encompasses the right to hire and to fire municipal employees, subject to the "policies and procedures" promulgated by the board of aldermen, the "legislative body" (La.R.S. 33:362(A)(1)) charged with directing municipal policy. This duty to enact policies and procedures does not extend to the right to make individual decisions. Only at the officer level — a more policy-directed level — are the aldermen empowered to participate in individual selections, and, even then, they must act in collaboration with the mayor. See La.R.S. 33:383(C); 33:386(A), (C). We therefore conclude that § 1 of the Ordinance impermissibly trenches on the prerogative of the mayor in that it seeks to confirm
individuals, not promulgate policy and procedure. Accordingly, it was properly enjoined.
[3] Section 2 of Ordinance 937 provides as follows
 Except as may otherwise be provided in R.S. 33:362, prior to the hiring or firing of any non-Civil Service employee of the City of Harahan, the Mayor shall first present to the Board of Aldermen the name of the employee to be either hired or fired, the rate of compensation that the employee is to be paid at the time of hire or is then being paid in the case of a proposed termination. The Mayor shall also provide the Board with the amount of money then available in the budget of the department in which the proposed employee is to be hired.
Section 2 presents a somewhat closer question, for, unlike § 1, it appears to establish a procedure for hiring and firing. However, while we are cognizant that requiring information to be supplied before any employment action undercuts the construction of this section as a mere registry provision and is, apparently, in furtherance of the confirmation goal of § 1, this section standing alone establishes only a procedure ensuring that the board of aldermen is supplied with certain information. Therefore, § 2 was improperly enjoined; we set aside the injunction as to this section.
[4] Section 3 of Ordinance 937 states that,
 Except as may otherwise be provided in R.S. 33:362, prior to the hiring of any non-Civil Service employee of the City of Harahan on and after January 1, 1987, the Mayor shall certify to the Board of *Page 1125 
Aldermen that the person who is proposed for hire meets all of the qualifications for the position to be filled as set out in the applicable job description for employees presently in effect for the City of Harahan.
This section appears to establish only a procedural check as to the applicant's qualifications. That is, it enacts a reasonable step to be undertaken in the hiring process. Therefore, the injunctive action by the trial court regarding this section is set aside.
[5] Section 4 provides thus:
 Anything contained in this Ordinance to the contrary notwithstanding, the Mayor of the City of Harahan shall have the power and authority to suspend, for cause, any non-Civil Service employee of the City of Harahan for a period not to exceed the number of days between the date of such suspension and the next regular or special meeting of the Board of Aldermen, without having to first obtain the confirmation of the Board of Aldermen.
The mayor's power to hire and to fire encompases also the power to suspend. Therefore, § 4 was properly enjoined.
By its terms, the Ordinance deems any sections declared invalid to be severable from provisions that can be given effect.[3] Accordingly, we entertain no hesitancy in allowing only parts of the Ordinance to stand.
For the reasons assigned, that aspect of the trial court's judgment which enjoined §§ 2 and 3 of Ordinance 987 is hereby set aside. In all other respects, the judgment dated March 19, 1987 is affirmed. All costs of this appeal are to be assessed against the appellants.
 SET ASIDE IN PART AND AFFIRMED IN PART. *Page 1 
 ATTACHMENT
June 12, 1996
OPINION NUMBER 90-112
 Donald D. Landry, Esq. Donald D. Landry, Esq. Counsel for Town of Broussard Perrin, Landry, deLaunay 
Durand P.O. Box 53597 Lafayette. LA 70505
Dear Mr. Landry:
We are in receipt of your request for an opinion of the Attorney General. Succinctly, your questions are relative to powers of the Board of Aldermen for the Town of Broussard to hire, fire and regulate town employees. The validity of a proposed ordinance is questioned which would create a three-man committee with the power to hire, fire, investigate and discipline all employees of the town, and in the alternative, a four-man committee consisting of three aldermen and the Mayor with this power. Additionally, the validity of an ordinance is questioned wherein the four-man committee, while not having the power to hire and fire, could suspend, reprimand, discipline and investigate to get all employees working together. The committees would be construed as acting with the full authority of the full Council and have sole discretion in their action.
In contrast to the previously enumerated municipal powers that existed under R.S. 33:401-403, R.S. 33:361 now contemplates a municipality as a more or less autonomous entity. Nevertheless, the Legislature has still designated the exercise of certain powers in a Lawrason Act community as Broussard. Included in this designation is the directive that the mayor is the chief executive officer with his duties being set forth in R.S.33:404. Among the responsibilities of day-to-day administration, he has the authority, subject to state law, ordinance, and civil service rules, "to appoint and remove municipal employees". Atty. Gen. Op. Nos. 88-33, 86-705. While the aldermen can promulgate the policies and procedures for the hiring and firing, such as qualifications, limit the number, office hours (Atty. Gen. Op. Nos. 87-477, 86-325), they do not have the authority to do the hiring or firing. *Page 2 
In the case of Bourgere v. Anzelmo, 517 So. 2d 1121 (La.App. 1987) the Court ruled that ordinances placing constraints on the hiring, firing and suspension of non-civil service municipal employees by the Mayor was in conflict with the statute giving the Mayor the administrative responsibilities for administering the municipality. It was invalid to give the aldermen a final veto or assent. The Court held that the Mayor has the right to hire and fire, subject only to the "policies and procedures" promulgated by the board of aldermen. As stated by the Court, "This duty to enact policies and procedures does not extend to the right to make individual decisions." Additionally, the Court concluded that the Mayor's power to hire and fire encompasses the power to suspend, and the ordinance requiring confirmation by the Board of Aldermen for suspension was invalid.
Based upon this reasoning, it must be concluded that the proposed ordinances giving a committee the power to hire, fire or suspend, or even participate jointly with the Mayor, is invalid inasmuch as this is a function of the Mayor under R.S. 33:404(A)(3). Not only do we find the proposed ordinances unacceptable, it is impossible to draft an ordinance which would give the Board of Aldermen the authority to hire, fire or suspend because of the statutory restrictions that give this authority to mayors.
We hope this will sufficiently answer your questions, but if we can be of further assistance, please do not hesitate to contact us.
Sincerely yours.
 WILLIAM J. GUSTE, JR. Attorney General
 By:______________- BARBARA B. RUTLEDGE Assistant Attorney General *Page 1 
 ATTACHMENT
July 13, 1987
OPINION NUMBER 87-477
 Mr. William M. Ford Municipal Attorney Post Office Box 149 Alexandria, Louisiana 71309-0149
Dear Mr. Ford:
You requested an opinion from this office concerning the propriety of certain resolutions and/or ordinances proposed and adopted by the board of aldermen for the Town of Pollock. the Town of Pollock is a Lawrason Act municipality and is therefore governed by the applicable statutes.
Your first concern dealt with the propriety of a special meeting called by the board of aldermen. Your specific concern addressed the notice which is required to be given when a special meeting has been called. LSA-R.S. 33:405 addresses meetings of the board of aldermen. With reference to special meeting, it provides, in pertinent part, as follows:
 C. Special meetings of the mayor and board of aldermen may be called by the mayor or a majority of the members of the board. The board shall establish by ordinance how notice of special meetings shall be provided to members of the board and the mayor. The notice for a special meeting shall specify the business to be considered at the special meeting. Public notice shall be given as provided in R.S. 42:7.
No business, except that specified in the notice of the special meeting, shall be considered at the meeting unless approved by two-thirds of the aldermen present at the meeting. *Page 2 
 D. (1) In cases of extraordinary emergency, as defined in R.S. 42:6.1(A)(5), the mayor or any aldermen may call an emergency meeting of the board of aldermen. The members of the board and the mayor shall be notified of the meeting in the most practical manner available, and the purpose of the meeting may be stated in general terms. Notice of the meeting shall be given as provided in R.S. 42.7. (Emphasis added.)
LSA-R.S. 42:7 provides, in pertinent part, as follows:
 A. (1) All public bodies, except the legislature and its committees and subcommittees, shall give written public notice of their regular meetings, if established by law, resolution, or ordinance, at the beginning of each calendar year. Such notice shall include the dates, times, and places of such meetings. All public bodies, except the legislature and its committees and subcommittees, shall give written public notice of any regular, special, or rescheduled meeting no later than twenty-four hours before the meeting. Such notice shall include the agenda, date, time, and place of the meeting, provided that upon approval of two-thirds of the members present at a meeting of a public body, the public body may take up a matter not on the agenda. . .
 (2) Written public notice given by all public bodies, except the legislature and its committees and subcommittees, shall include, but need not be limited to:
 (a) Posting a copy of the notice at the principal office of the public body holding the meeting, of if no such office exists, at the building in which the meeting is to be held; or by publication of the notice in an official journal of the public body no less than twenty-four hours before the meeting. *Page 3 
 (b) Mailing a copy of the notice to any member of the news media who requests notice of such meetings; any such member of the news media shall be given notice of all meetings in the same manner as is given to members of the public body. (Emphasis added.)
In accordance with the quoted provision, all public bodies (board of aldermen included) must give written public notice of a special meeting no later than twenty-four (24) hours before the meeting. The notice must include the agenda, date, time and place. A copy of the written notice must be either posted at the principal office of the board or at the buildings in which the meeting is to be held; or it must be published in the board's official journal at least twenty-four (24) hours before the meeting.
LSA-R.S. 42:9 provides that any action taken in a meeting which is violative of LSA-R.S. 42:7 is voidable. It provides:
 Any action taken in violation of R.S. 42:4.1 through R.S. 42:8 shall be voidable by a court of competent jurisdiction. A suit to void any action must be commenced within sixty days of the action.
In conclusion, the public notice requirements of LSA-R.S. 42:7 must have been complied with by the board of aldermen in calling the special meeting. If there was no compliance with the provision, all actions taken in the meeting are subject to being declared void by a court of competent jurisdiction. However, in order to void such actions, a suit must be filed within 60 days of the dates the voidable action was taken.
You also posed questions concerning the propriety and/or legality of certain ordinances and resolutions proposed or adopted at the meeting by the board of aldermen. The major concern appears to address the board of aldermen's authority or power as a legislative body, to interfere with the mayor's authority and powers as the administrative officer of the municipality. *Page 4 
LSA-R.S. 33:362 outlines the respective powers of the municipal governing body. It provides, in pertinent part:
 A. (1) The legislative powers of a municipality shall be vested in and exercised by the board of aldermen.
 (2) The board of aldermen may:
 * * * * * * (b) Enact ordinances and enforce the same by fine not to exceed five hundred dollars or imprisonment not exceeding sixty days, or both.
 (c) Provide by ordinance for assessing against the abutting property the cost of cutting, destroying, or removing noxious weeds, grass, or other deleterious, unhealthy, or noxious growths or accumulations on any sidewalk; assess on the owner of such lot or place or area the cost of cutting, destroying, or removing noxious weeds, grass or other deleterious, unhealthy, or noxious growths or accumulations within the corporate limits; and on the owner of any lot or place or area within the corporate limits the cost of cutting, destroying or removing noxious weeds, grass, or other deleterious, unhealthy, or noxious growth or accumulation on the lot or place or area; and provide for the filing of notice of such cost which shall constitute a privilege upon the property and shall be prior in rank to mortgages, vendor's privileges, and all other privileges except tax privileges.
 (3) Subject to law, including R.S. 33:423.2 and 423.3, and applicable civil service rules and regulations, the board of aldermen shall, by ordinance, provide policies and procedures regulating the employment of municipal employees including the hiring and firing of such employees. *Page 5 
 B. The mayor shall be the chief executive officer of the municipality.
In accordance with the quoted provision, the legislative powers of a municipality are vested in the board of aldermen and the mayor serves as the chief executive officer of the municipality. As the legislative body, the board of aldermen have the authority to enact ordinances which include the enactment of ordinances which provide policies and procedures regulating the employment of municipal employees. The mayor is designated as the chief executive officer of the municipality and his powers are outlined in LSA-R.S. 33:404. The provision provides:
 A. The mayor shall have the following powers, duties, and responsibilities:
 (1) To supervise and direct the administration and operation of all municipal departments, offices, and agencies, other than a police department with an elected chief of police, in conformity with ordinances adopted by the board of aldermen and with applicable provisions of state law. All administrative staff shall be subordinate to the mayor.
 (2) To delegate the performance of administrative duties to such municipal officers or employees as he deems necessary and advisable.
 (3) Subject to applicable state law, ordinance, and civil service rules and regulations, to appoint and remove municipal employees, other than the employees of a police department with an elected chief of police. However, appointment or removal of a nonelected chief of police, the municipal clerk, the municipal attorney, or any department head, shall be subject to approval by the board of aldermen, except that in the case of tie vote, the recommendation of the mayor shall prevail. *Page 6 
 (4) To sign all contracts on behalf of the municipality.
 (5) To prepare and submit an annual operations budget and a capital improvements budget for the municipality to the board of aldermen in accordance with the provisions of R.S. 39:1301 et seq. and any other supplementary laws or ordinances.
 (6) To represent the municipality on all occasions required by state law or municipal ordinance.
 (7) To be the keeper of the municipal seal and affix it as required by law.
 (8) To sign warrants drawn on the treasury for money, to require that the municipal clerk attest to such warrants, to affix the municipal seal thereto, and to keep an accurate and complete record of all such warrants.
 (9) To have any other power or perform any other duty as may be necessary or proper for the administration of municipal affairs not denied by law.
 B. The provisions of this Section shall not be construed to alter, affect, or amend any powers, duties and functions of any elected chief of police as set forth in R.S. 33:423, R.S. 33:423.2, and R.S. 33:423.3.
The mayor is given the authority to supervise and direct the administration and operation of all municipal departments, except a police department with an elected chief of police. Additionally, he is given the power to perform any other duty necessary for the administration of the municipal affairs. The proposed ordinances "governing purchasing procedures" and "setting policies for the parking of town vehicles" both appear to infringe on the mayor's power and *Page 7 
authority as the executive officer and administrator of the municipality and municipal affairs. As the municipal administrator, the mayor is responsible for the day to day operations of the municipality. The requirements and mandates in the referenced ordinances would interfere with his right to conduct the daily operations of the municipality and are therefore improper.
The mayor is also given the authority to sign warrants drawn on the municipal treasury, to require that the clerk attest to such warrants to affix the municipal seal on the warrant and to keep an accurate and complete record of all warrants. It has been the opinion of this office that the signing of checks and other legal documents is a governmental and executive duty specifically granted to the mayor which only he can exercise. It is not an administrative duty to be performed by an other officer. Thus, the ordinances which authorizes two council members, and only those individuals, to sign municipal checks are violative of LSA-R.S. 33:404 and improper.
While the mayor has the authority to appoint and remove municipal employees, the board of aldermen have been given the authority, as the municipal legislative body, to provide policies and procedures regulating the employment of municipal employees, including the hiring and firing of municipal employees. This granted authority can, if necessary, include the authority to limit or determine the number of municipal employees. Therefore, I see no impropriety in the municipal resolution which temporarily reduces the number of municipal employees.
One of the resolutions called for the collection of municipal occupational taxes due for the year 1986. LSA-R.S. 33:361 addresses the powers of the municipality as an entity. It provides:
 A. Except as otherwise provided in this Part, a municipality shall be vested with all powers, rights, privileges, immunities, authorities, and duties heretofore possessed in accordance with all constitutional and statutory provisions with respect thereto. A municipality is further authorized to exercised any power and perform any function necessary, requisite, or proper for the management of its affairs not denied by law. *Page 8 
 B. The power to perform any function necessary, requisite, or proper for the management of its affairs shall specifically include the power to levy and collect taxes and to assume indebtedness as provides by law. In this regard, the board of aldermen of a municipality may levy and collect taxes, incur debt, and issue bonds and other evidences of indebtedness as authorized by law. (Emphasis added.)
The municipality is specifically given the authority to levy and collect taxes. Therefore, the resolution calling for the collection of due municipal occupational taxes is proper.
The final items concerned the dedication of municipal funds and the limitation of expenses for maintenance of police cars. It is felt that both of these items can best be dealt with in the municipal budgetary process. The Louisiana Government Budget Act requires each political subdivision to prepare a comprehensive budget presenting a complete financial plan for the ensuing fiscal year for the general fund and each special revenue fund. This budegt forms (or should form) the basis from which governing authorities monitor revenues and control expenditures. Each of the referenced items are items which should be included in or form a part of the municipal budget since the budget is the document which authorizes expenditures from municipal funds.
It is hoped that this opinion has been of some assistance to you. If we may be of any further assistance, please feel free to contact us.
Sincerely,
 WILLIAM J. GUSTE, JR. Attorney General
 BY:______________ Cassandra A. Simms Assistant Attorney General *Page 1 
 ATTACHMENT
June 23, 1986
OPINION NUMBER 86-325
 Mr. Bruce C. Bennett Town Attorney Town of Independence Post Office Drawer 2398 Hammond, Louisiana 70404
Dear Mr. Bennett:
You requested an opinion from this office concerning the authority of a Lawrason Act board of aldermen. Specifically, you asked if the board of aldermen has the authority to establish, by ordinance, the office hours for and regulations requiring the use of a time clock by the street commissioner (who is also mayor) and the appointed fire chief.
LSA-R.S. 33:381 provides that Lawrason Act mayors and street commissioners are officers of the municipality. It has been the opinion of this office that a Lawrason Act mayor is an elected official on full time duty and, as an elected official, he can not be relegated to an inferior position of an employee. Therefore, any municipal provisions regulating or establishing the office hours of a municipal employee do not apply to the mayor either in his capacity as mayor or street commissioner. This does not, however, apply to the appointed municipal fire chief.
LSA-R.S. 33:362 gives the board of aldermen the legislative powers of a municipality. It provides, in pertinent part, as follows:
 A. (1) The legislative powers of a municipality shall be vested in and exercised by the board of aldermen. *Page 2 
 (3) Subject to law, including R.S. 33:423.2 and 423.3, and applicable civil service rules and regulations, the board of aldermen shall, by ordinance, provide policies and procedures regulating the employment of municipal employees including the hiring and firing of such employees.
LSA-R.S. 33:404 provides for the duties and powers of a Lawrason Act mayor. It provides, in part, that:
 A. The mayor shall have the following powers, duties, and responsibilities:
 (1) To supervise and direct the administration and operation of all municipal departments, offices, and agencies, other than a police department with an elected chief of police, in conformity with ordinances adopted by the board of aldermen and with applicable provisions of state law. All administrative staff shall be subordinate to the mayor.
Generally, the board of aldermen of a Lawrason Act municipality has the authority to provide, by ordinance, policies and procedures regulating the employment of all municipal employees. While the mayor is the chief municipal administrative officer and is given the authority to supervise and direct the day to day administration and operation of all municipal departments and agencies, he has not been given the specific authority to set or establish municipal policies and procedures which would regulate the employment of municipal employees. The establishment of office hours for municipal employees and other policies which regulate the employment of said employees appears to come within the realm of the board's authority to provide policies and procedures regulating the employment of municipal employees.
Thus, it is the opinion of this office that the board of aldermen has the authority to establish, by ordinance, office *Page 3 
hours for and regulations requiring the use of a time clock by municipal employees, including the fire chief.
It is hoped that this opinion has been of some assistance to you. If we may be of any further assistance, please feel free to contact us.
Sincerely,
 WILLIAM J. GUSTE, JR. Attorney General
 BY:________________ CASSANDRA A. SIMMS Assistant Attorney General
[1] We are implored by the appellant also to determine whether injunctive relief is a proper remedy for the mayor to pursue. Inasmuch as we consider injunctive relief clearly proper under the rationales ofLentini v. City of Kenner, 252 La. 413, 211 So.2d 311 (La. 1968) andCaddo Parish School Bd. v. Bd. of Elections Supervisors of CaddoParish, 384 So.2d 448 (La. 1980), we shall not pursue the question further.
[2] See La.Const. art. VI § 2.
[3] Section 8, in full, reads as follows:
If any provision or item of the Ordinance or the application thereof is held invalid, such invalidity shall not affect other provisions, items, or applications of this Ordinance which can be given effect without the invalid provisions, items, or applications, and to this end the provisions of this Ordinance are hereby declared severable.